(February 10, 1948.)

Louis A. Bunim, Appellant, *v.* Ethel Bunim, Respondent.

</div>

Johnston, J. (dissenting). I dissent and vote to modify the judgment of divorce by striking out the second and third decretal paragraphs and substituting therefor a provision that custody of the children be awarded to plaintiff, with the right of visitation by defendant.

The parties have been married for sixteen years. Plaintiff is a physician, specializing in obstetrics, a fellow of the College of Surgeons, and, as the court stated, distinguished in his profession. He has an extensive practice from which his gross annual income is approximately $40,000. While his net worth is not disclosed, his real and personal property are substantial. We may assume, as there is no proof to the contrary, that he is of high moral character.

Defendant is thirty-eight years old and a college graduate. She formerly was a high school teacher and recently has been affiliated with charity organizations and active in philanthropic work. As the court stated, she is a "woman of remarkably unusual attainments in many ways * * *." The parties and their children — two daughters, now twelve and fourteen years of age — resided in a private house of thirteen rooms and five baths, title to which is in a corporation of which plaintiff owns one half of the capital stock. Plaintiff having been granted a decree of absolute divorce, the sole question presented is the custody of the children. While making a finding, which is not controverted, that plaintiff is a fit and proper person to have custody of his children, the court awarded their custody to defendant, with liberal rights of visitation to plaintiff, and directed plaintiff to pay defendant $500 monthly for the support and maintenance of the children, who presently are living with defendant in a hotel. Implicit in the decree is a finding, which is controverted, that defendant is a fit and proper person to have custody of the children.

While I would prefer to refrain from describing and characterizing defendant's conduct as disclosed by this record, some of the essential facts must be stated. The complaint alleged that between July 27, 1946, and October 12, 1946, defendant committed adultery with one Andre Bakouche, a resident of Algeria, at hotels in New York City and Chatham, Massachusetts. Defendant in her verified answer denied the several acts of adultery charged in the complaint and, for an affirmative defense, alleged they were committed with plaintiff's consent. At the trial the denials in the answer were withdrawn and defendant admitted that she committed the specific acts charged and others, and that she stayed, sometimes over a week end, at hotels in New York City and Washington, D. C., with Bakouche, and spent a ten-day vacation with him at a hotel in Chatham, Massachusetts. Defendant also admitted that during the months of November and December, 1946 — after she and Bakouche were discovered in *flagrante delicto* in a hotel in New York City and subsequent to the service of her answer in this action, and up to a few weeks before the trial, when Bakouche left this country for his own — she continued her meretricious relations with him. The affirmative defense that the adulteries were committed with plaintiff's consent — which defendant by her testimony alone attempted to establish at the trial — was found to be false, and defendant has not appealed with respect to that determination. Defendant further admitted that at the time she committed the adulteries she knew that Bakouche was married, and that his wife and two children resided in Algeria. Defendant also stated that at the time of her intimacy with Bakouche, she loved him and he loved her, and they planned to marry after he divorced his wife. Where — after their marriage — they intended to reside does not appear, but probably in Algeria where, according to defendant, Bakouche had a very large and successful business.

Defendant's standard of morals, brazenly asserted in her effort to justify her conduct appears in her own testimony as follows: " Q. In other words, you, a married woman, supported by your husband, and with growing daughters, thought that you would see how you liked living with this Frenchman who himself had a wife in France and children? A. Well, that is one way of putting it. * * * Q. Is it one of your principles that the only way to know a man is to live with him? A. For me, yes. Q. And that is in your opinion a moral and ethical principle, is it; yes or no. A. For me, yes. Q. That, however, would not be a good principle for anyone else in the world but you? A. I didn't say that. Q. Is it a good principle for women other than you? A. Might I ask you something? Q. No, just answer my questions, please. Is that a principle, a good principle only for you or is it a good principle for other women too? A. I don't regard myself as any authority to tell other people in the world how they must live. My affair is my family, that's my affair. * * * Q. I am trying to get your standard, as the person who wants to have the custody of children. Is that principle that you expressed a principle applicable, not only to yourself, but to other women as well; yes or no. A. To full-grown adults, yes, but not when they are young — to full-grown adults who are mature and who know something about life and who understand people. Then I think they are free; otherwise they have no right. Q. What is your definition of a full-grown adult? A. I feel a full-grown adult— Q. Give me the age. A. I don't think any woman is a full-grown adult until she reaches the age of over 28. Q. Then it is your standard and moral principle that a woman over the age of 28 is following proper ethical standards who chooses to sleep and have intercourse with a man other than her husband; is that right? A. If she wishes it, it is right. * * * Q. You think what you have done

here was perfectly moral and fine? A. I think it was moral under the circumstances, yes. Q. And you would be perfectly willing to have your daughters follow the kind of conduct that you call moral? A. If they were my age, I would say yes."

Of course, the welfare of the children is the paramount and controlling consideration. In other words, which of these parents is better suited to be the guardian of these adolescent girls during their minority, or from whose custody will they emerge the better women? I for one reject and resent counsel's argument that her "relationship [with Bakouche] did not involve any element of depravity or denote any lack of morality on the part of defendant", and that "defendant's indiscretions do not in any wise reflect adversely upon her character and certainly do not affect her right or impair her ability to rear her children." Defendant's so-called "indiscretions" amount to grave misconduct and gross immorality denounced by the Divine and condemned by the civil and criminal law. She is not only a persistent adulteress but a proven perjurer. The record establishes to the point of demonstration that her testimony in the main was a tissue of falsehood. Her attempt to show that her husband consented to her infidelities was as wicked as it was stupid. Her erroneous views of the obligations of the marriage contract are shocking and her whole philosophy revolting. Her conduct and code prove that she is an unworthy and unfit guardian of her daughters.

It is well settled that in general the custody of the children of such parties will be given, not to the guilty one, but to the innocent. (*Lester* v. *Lester,* 178 App. Div. 205, 213, affd. 222 N. Y. 546.) We are reminded, however, that there have been instances where custody of children has been awarded to the erring spouse. That is so under unusual circumstances peculiar to a particular case or where there was but a single moral lapse and the offending parent is making such atonement as is possible. But in the case at bar there is neither proof nor claim that defendant has repented, and there is no pretense that she has or is likely to renounce her immoral philosophy. Nor did she exhibit the slightest remorse for the injury which she was about to visit upon her paramour's wife and children.

I am not unmindful that the learned Justice who tried the case had an opportunity, denied us, of seeing and hearing the witnesses, including the parties, at the trial and, in the absence of counsel, interviewing the parties and interrogating the children, whose interests are the primary consideration. That fact would be persuasive, perhaps controlling, if our determination were dependent — as it is not — upon the credibility of the witnesses or the weight of the evidence. As the court gave no reason for its conclusion, we cannot determine what it considered as the basis for its decision on the issue of custody.

It is difficult to understand how the court could find "That the interests and welfare of the children * * * will be best served by awarding the custody to the defendant" unless it was influenced by the expressed preference of the children to live with their mother.

It is true that the children stated they loved their mother. That is understandable for, happily, they are uninformed as to the reason for the separation of their parents. But they also stated they loved their father and he loved them, and defendant admitted that is the fact.

Where the issue is custody, the desires of the children who have reached the age of discretion, while not decisive, may not be ignored and should be considered, but only where the claims of the father and mother are equal, and there is an absence of proof that the preferred parent is unfit. (*People ex rel.*

*Glendening* v. *Glendening*, 259 App. Div. 384, affd. 284 N. Y. 598.) That is not this case.

While defendant professes love for her children, it is not easy, at least for me, to reconcile her professions with either her performance or her philosophy. She not only wrecked her own home but was willing to be a party to destroying the home of Bakouche who, if she has her way, will abandon his wife and desert his children. The anomaly of this judgment is that the guilty party carries none of its burdens, except it decrees—what she admits—that she is an adulteress, and as to that she has no qualms. The tragedy of this judgment is that the innocent party, whose home has been shattered through no fault of his own, loses not only his wife, of whose perfidy he is the victim, but his children, whom he loves and who love him. I find in this record no. rational basis for confiding the moral, intellectual and spiritual welfare of these two young girls to defendant.

Carswell, Acting P. J., Adel, Sneed and Wenzel, JJ., concur; Johnston, J., dissents and votes to modify the judgment of divorce by striking out the second and third decretal paragraphs and substituting therefor a provision that custody of the children be awarded to plaintiff, with the right of visitation by defendant, with opinion.

Judgment awarding plaintiff a decree of absolute divorce, and custody of the children of the marriage to defendant, with the right of visitation by plaintiff, insofar as appealed from, affirmed, with costs. No opinion.